Fuld, J.
On this appeal, here by our permission, the plaintiffs seek a reversal of an order dismissing their complaint. The action was brought for specific performance of an agreement, made some 30 years ago by The Embossing Company, the defendant’s predecessor in title, to furnish heat to the building on the land belonging to the plaintiffs, and for damages resulting from the defendant’s failure to perform that agreement. The plaintiffs recently sold their property to the defendant and, while this renders impossible a decree of specific performance, it does not render the appeal moot or academic, since there still remains the possibility of damages stemming from breach of the agreement.
The facts to be gleaned from the complaint, which, of course, we read in a light most favorable to the plaintiffs, date from 1929. In that year, The Embossing Company, desiring to build a switch branch track from its factory, located on Church Street in Albany, to the main track of the railroad owned and operated by the Delaware & Hudson Company,- applied to that company and to the City of Albany for permission to do so. To accomplish this, it was also necessary for Embossing to obtain the consent of Aaron Nicholson who owned the adjoining premises. As a condition to giving his consent, Nicholson insisted upon a contract whereby Embossing agreed “ to furnish steam heat ” *243 to the building on his property and ‘ ‘ to furnish and maintain all necessary steam pipes and return pipes for that purpose ” and, in consideration, Nicholson agreed to pay $50 a year. The agreement, dated October 7, 1929, expressly provided that it ‘ ‘ applies to and is binding upon the heirs, executors, administrators and assignees of the parties ”. Embossing’s application was granted and the branch track was constructed. In fulfillment of its covenant, Embossing set up the necessary steam pipes and return pipes, undertook to furnish steam heat to the adjoining building and for some 27 years, from 1929 until 1956, continued to carry out its agreement and to furnish heat to the plaintiffs’ premises in return for the stipulated fee of $50.[1]
The defendant purchased Embossing’s property in 1956, and it was this sale which precipitated the present lawsuit.
More particularly, and we continue to cull from the complaint, in March of 1956, Embossing entered into a contract with one Jack Spitzer to sell the property to him. In making this contract, Spitzer “intended that title to said premises would be conveyed to the defendant, 300 Broadway Realty Corporation, and was acting for and on behalf of [said] defendant * ° *, then or about to be organized and incorporated by the said Spitzer ”. And Spitzer, on behalf of himself and his assignees, “ agreed upon the conveyance of said premises * * * to perform ” Embossing’s obligation under the 1929 agreement. Then, on April 25, 1956, Spitzer, still ‘ ‘ acting for and on behalf of the defendant ”, assigned the contract to Betty Thompson who was also “ acting solely as the [defendant’s] agent * * * and on its behalf ” and, on the same day, Embossing, at Spitzer’s request, executed a deed of the property to her. This deed, signed and acknowledged by Thompson as grantee, recited that the premises “ are conveyed subject to the terms of [Embossing’s 1929] agreement * * # pertaining to the heating ” of the premises and that the grantee, by her execution of the instrument, “agrees to perform ” those terms. And, more or less contemporaneously, Thompson executed another deed, conveying the premises to the defendant, but this one made no reference to the 1929 agreement.
The complaint goes on to charge that tlie defendant, haying ‘ ‘ actual, as well as constructive, notice and knowledge ’ ’ of the *244 1929 agreement, adopted the procedure outlined solely ‘‘ for the purposes of attempting to avoid performance of the obligation of supplying steam heat ’ \ And, finally, after characterizing the obligation as “ a covenant running with the land ’ ’, the complaint recites that the plaintiffs made demands upon the defendant to furnish the heat, that the latter refused to do so and that the plaintiffs were damaged thereby.
As noted above, the complaint was dismissed on the ground that it fails to state a cause of action. Reasoning that a covenant to furnish heat, being affirmative in nature, is not one which may run with the land, the courts below concluded that Embossing’s obligation was not enforcible against the defendant as a subsequent grantee, and that frames one of the questions for decision: does the affirmative character of the covenant exclude it from the classification of covenants which “touch” or “ concern ” the land!
It has long been the rule in this State, and it finds expression in the leading case of Miller v. Clary (210 N. Y. 127), that “ a covenant to do an affirmative act, as distinguished from [one] merely negative in effect, does not run with the land so as to charge the burden of performance on a subsequent grantee.” (Guaranty Trust Co. of New York v. New York & Queens County Ry. Co., 253 N. Y. 190, 204; see Booth v. Knipe, 225 N. Y. 390, 395; Morehouse v. Woodruff, 218 N. Y. 494, 501.) In this, New York has followed the English view, not adopted elsewhere in this country, which undoubtedly owes its development to a desire to prevent burdensome incumbrances upon title. However, before our decision in the Miller case (210 N. Y. 127, supra), as well as thereafter, we recognized a number of exceptions to the rule.[2] In addition, some 20 years ago, in Neponsit Prop *245 erty Owners’ Assn. v. Emigrant Ind. Sav. Bank (278 N. Y. 248), this court, in treating an affirmative covenant to pay a sum of money each year to maintain and improve a residential area as one which touched and concerned the land, indicated a strong disposition to look to “ substance ” rather than “ technical form ” and adopt a more realistic and pragmatic approach to the problem. (See, also, 165 Broadway Bldg. v. City Investing Co., 120 F. 2d 813, cert, denied 314 TJ. S. 682; 5 Powell, Real Property [1956], p. 184; Clark, Beal Covenants [2d ed., 1947], p. 133.) ¡Recognizing that it might be ‘ ‘ inexpedient and perhaps impossible to formulate a rigid test or definition ” to cover all cases, the court declared that a covenant should be held to touch or concern the land, to run with the land, if it affects “ the legal relations — the advantages and the burdens — of the parties to the covenant, as owners of particular parcels of land and not merely as members of the community in general, such as taxpayers or owners of other land ”. This “ method of approach,” added the court, ‘ ‘ has the merit of realism. The test is based on the effect of the covenant rather than on technical distinctions. Does the covenant impose, on the one hand, a burden upon an interest in land, which on the other hand increases the value of a different interest in the same or related land? ” (278 N. Y., at pp. 257-258.) And, significantly, the court continued, “unless we exalt technical form over substance, the distinction between covenants which run with land and covenants which are personal, must depend upon the effect of the covenant on the legal rights which otherwise would flow from ownership of land and which are connected with the land. The problem then is: Does the covenant in purpose and effect substantially alter these rights? ” (p. 258).
Having in mind the question now presented for decision, the law may be briefly summarized. The burden of affirmative covenants may be enforced against subsequent holders of the originally burdened land whenever it appears that (1) the original covenantor and covenantee intended such a result; (2) there has been a continuous succession of conveyances between the original covenantor and the party now sought to be burdened; and (3) the covenant touches or concerns the land to a substantial degree. In the case before us, it is clear that all *246 three of these essentials are present; indeed, it is only with the third that we need concern ourselves.
If, as our decision in Neponsit makes clear, the test as to whether a covenant touches or concerns the land is “ based upon substance rather than upon form ”, on “ the [covenant’s] effect # * * rather than on technical distinctions ” (278 N. Y., at p. 258), it would seem that the covenant here under consideration does touch and concern the land of the defendant. As is evident, it affected the legal relations of the parties to the covenant as owners of particular parcels of land. More particularly, the covenant gave to the covenantee Nicholson a right, not possessed by other landowners, of having heat supplied to his building, as long as it stood, and it imposed upon the covenantor Embossing, so long as the heat-producing facilities remained on its land, the burden, not cast upon other landowners, of furnishing heat to premises adjoining its own. The fear expressed that the covenant imposes an undue restriction on alienation or an onerous burden in perpetuity is dispelled by the fact that by its terms it may run with the land only as long as both buildings are standing and in use.
The complaint before us may thus be sustained upon the theory that Embossing’s covenant runs with the land and is, therefore, enforcible against the defendant as a subsequent grantee. However, the complaint may also be upheld upon the simpler and equally compelling ground that it spells out a cause of action for breach of contract. Accordingly, we briefly recapitulate its allegations insofar as they reflect such cause of action. By the 1929 agreement, Embossing promised to furnish steam heat, as specified, so long as the promisee should continue to make payments of $50 a year. Under the ‘ ‘ heirs and assigns ’ ’ clause of that agreement, the plaintiffs are the successors in right of the original promisee, Aaron Nicholson, and entitled to enforce their rights under the agreement not only against Embossing, but also against any other party who expressly assumed Embossing’s contract duty to the plaintiffs. What, then, is the legal effect of the purchase transaction which resulted in the April 25, 1956 conveyances by Embossing to Thompson and by Thompson to the defendant?
*247 If the defendant had merely taken conveyance of the property, without expressly assuming performance of the contract duty owed by Embossing to the plaintiffs under the 1929 contract, the plaintiffs would have had no contractual claim against the defendant. (See, e.g., Langel v. Betz, 250 N. Y. 159, 164; Sillman v. Twentieth Century-Fox Film Corf., 3 N Y 2d 395, 402.) But the complaint here alleges that the defendant, initially through its agent Spitzer and then through its agent Thompson, expressly assumed the performance of Embossing’s contract duty to furnish steam heat to the plaintiffs ’ building.
Although Embossing could not relieve itself of its obligation on the covenant in the absence of a complete novation, ’it may be inferred from the complaint that Embossing would not have sold its property on the terms fixed had it not been assured that the grantee, the real grantee, of its property would assume its obligation to furnish heat. The complaint alleges that the conveyance procedure employed by the defendant was designed solely to enable it ££ to avoid performance of [its] obligation ”. If such was the defendant’s purpose, it must be condemned; to approve what was here attempted would be to sanction an evasion which offends against concepts of fair dealing and falls far below permissible standards of business morality. Be this as it may, though, any purpose or intent that the defendant may have had to avoid performance of the obligation will bo wholly ineffectual if the plaintiffs are able to prove their allegations of agency and express assumption of duty.
Accepting, as on this appeal we must, the truth of the allegations that the express provisions of assumption were actually made by Spitzer and Thompson, as agents, £ ‘ acting for and on behalf of the defendant ’ ’, there can be no doubt that the plaintiffs have a direct right of action against the latter to enforce the contract duty explicitly assumed by it through agents. The assumption agreement between Embossing and the defendant is supported by manifest consideration and constitutes a creditor beneficiary contract in which Embossing is promisee, the defendant is promisor and the plaintiffs are third-party beneficiaries. (See, e.g., Lawrence v. Fox, 20 N. Y. 268; Restatement, Contracts, §§ 133, 136.)
On the trial of the action for damages, it may well be that the plaintiffs will not be able to prove, as they must to sustain their *248 claim as to the breach of contract cause of action, that Spitzer and Thompson, or either of them, acted as agents for the defendant in assuming the duty of performing Embossing’s contractual obligation to furnish the heat. It may also be, in view of their own subsequent sale of the premises to the defendant, that the plaintiffs will not be able to establish that they suffered any damages. However, whatever the facts may prove to be, the complaint on its face states a valid cause of action in contract, entitling the plaintiffs to their day in court.
The judgment of the Appellate Division should be reversed, with costs in all courts, and the motion to dismiss the complaint denied, . The motion to dismiss the appeal should also be denied.
Chief Judge Conway and Judges Desmond, Froessel and Burke concur with Judge Fuld; Judge Van Voorhis concurs in the following memorandum in which Judge Dye concurs: In Guaranty Trust Co. v. New York & Queens County Ry. Co. (253 N. Y. 190, 204), it was said in the opinion by Cardozo, Ch. J.: “ Subject to a few exceptions not important at this time, ’there is now in this State a settled rule of law that a covenant to do an affirmative act, as distinguished from a covenant merely negative in effect, does not run with the land so as to charge the burden of performance on a subsequent grantee ”. In Neponsit Property Owners’ Assn. v. Emigrant Ind. Sav. Bank (278 N. Y. 248, 256), this statement was quoted in the opinion by Judge Lehman, coupled with the statement in relation thereto: “ We have not abandoned the historic distinction drawn by the English courts.” Insofar as the instant case deals with this question, I concur in holding that this covenant to supply heat runs with the land for so long as both buildings remain standing and in use. In thus voting, however, I do so on the assumption that the rule above stated is not being overruled but remains in force subject to this and a few other exceptions.
Judgment reversed, with costs in all courts, and case remitted to Special Term for further proceedings in accordance with the opinion herein. Motion to dismiss appeal denied.

. The plaintiffs succeeded to the ownership of Aaron Nicholson’s property in 1931.

. We note several of these exceptions: covenants to build fences along boundary lines (Moxley v. New Jersey & N. Y. R. R. Co., 143 N. Y. 649; Dey V. Prentice, 90 Hun 27), to maintain party walls (Mott v. Oppenheimer, 135 N. Y. 312), to provide railway crossings (Post v. West Shore R. R. Co., 123 N. Y. 580; Day v. New York Cent. R. R. Co., 31 Barb. 548), to maintain and repair buildings and dams (Nye v. Hoyle, 120 N. Y. 195; Denman v. Prince, 40 Barb. 213), to repair canal wall (Morehouse v. Woodruff, 218 N. Y. 494, supra), to repair and maintain right of way and sewers laid therein (Greenfarb v. R. S. K. Realty Corp., 256 N. Y. 130) and to pay for damages caused by sparks and cinders falling on ice of lake (Morgan Lake Co. v. New York, N. H. & H. R. R. Co., 262 N. Y. 234).