661 F.2d 6
 69 A.L.R.Fed. 394, 5 Collier Bankr.Cas.2d 242,
8 Bankr.Ct.Dec. 150
 In re Theodore W. SPONG, Debtor.
Raymond J. PAULEY, Plaintiff-Appellant,
v.
Theodore W. SPONG, Defendant-Appellee.
 No. 1267, Docket 81-5004.
 United States Court of Appeals,
Second Circuit.
 Argued April 27, 1981.
Decided Sept. 25, 1981.
 
 Raymond J. Pauley, Rochester, N. Y., for plaintiff-appellant.
 Gary F. Amendola, Rochester, N. Y. (Woods, Oviatt, Gilman, Sturman & Clarke, Rochester, N. Y., on the brief), for defendant-appellee.
 Before LUMBARD, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Section 523(a)(5) of the new Bankruptcy Act provides that a discharge in bankruptcy does not discharge a debtor from debts "for alimony to, maintenance for, or support of" a former spouse in connection with a divorce decree. 11 U.S.C. § 523(a)(5). This case presents the question whether a debt for legal services rendered to a debtor's former spouse in connection with a divorce proceeding falls within the above exception. The bankruptcy court ruled, and the district court agreed, that, even though under existing State law and section 17(a)(7) of the former Bankruptcy Act such debts were considered alimony and therefore nondischargeable, Congress, in amending the statute, intended to make them dischargeable. For the reasons set forth below, we reverse.
 
 
 2
 In July 1979, in the midst of a contested divorce proceeding in New York State Supreme Court, defendant and his former spouse entered into a stipulation of settlement. Defendant stipulated, among other things, that his wife's reasonable counsel fees were $10,000, and he agreed to pay $4,000 of this amount in monthly installments of $200 plus $514.40 for costs and disbursements. The installments were to be paid to plaintiff who represented defendant's wife throughout the divorce proceedings. The stipulation was subsequently incorporated in a final judgment of divorce entered on November 7, 1979.
 
 
 3
 On October 16, 1979, defendant filed a voluntary petition in bankruptcy under the new Bankruptcy Act, which had become effective sixteen days earlier, and listed his obligation to plaintiff as an unsecured claim. In this suit, brought by plaintiff to determine the propriety of discharge, the bankruptcy court held that the debt was dischargeable. In re Spong, 3 B.R. 619, 622 (Bkrtcy.W.D.N.Y.1980). The district court affirmed on the reasoning and authorities set forth in the bankruptcy court's decision and this appeal followed.
 
 
 4
 Although the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544, did not expressly except from discharge debts for alimony, maintenance or support of the bankrupt's wife or children, the Supreme Court held that debts arising out of the husband's natural and legal duty to support his wife were not dischargeable under the Act. Audubon v. Shufeldt, 181 U.S. 575, 577-80, 21 S.Ct. 735, 736, 45 L.Ed. 1009 (1901). Congress codified this construction of the Act in 1903 by providing that a discharge would not release a bankrupt from his liability "for alimony due or to become due, or for maintenance or support of wife or child." Act of Feb. 5, 1903, ch. 487, 32 Stat. 798. Under this provision, counsel fees that were awarded pursuant to a husband's support obligations generally were held to be nondischargeable, regardless of whether the fees were payable directly to the attorney. See, e. g., DuBroff v. Steingesser, 602 F.2d 36, 38 (2d Cir. 1979); Schiller v. Cornish, 529 F.2d 1363, 1365 (7th Cir. 1976).
 
 
 5
 In 1978 Congress enacted Pub.L.No.95-598, 92 Stat. 2549, sometimes referred to as the "Bankruptcy Reform Act of 1978", which provided that a discharge under the Act would not discharge an individual debtor from any debt
 
 
 6
 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that
 
 
 7
 (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or
 
 
 8
 (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.
 
 
 9
 11 U.S.C. § 523(a)(5).
 
 
 10
 Defendant contends that the language and legislative history of the 1978 Act evidences an intent by Congress to overrule the prior holdings concerning counsel fees. Specifically, defendant asserts that his debt is not alimony within the meaning of the statute nor is it payable to his former spouse. Although the bankruptcy court's opinion is somewhat lacking in decisiveness, it apparently holds that defendant's undertaking to pay his wife's counsel fees was in the nature of "alimony, maintenance, or support". 3 B.R. 622. The court concluded, however, that the debt was dischargeable because it was not payable to defendant's former spouse. Id. We agree with the first holding but disagree with the second.
 
 COUNSEL FEES AS ALIMONY
 
 11
 Under the 1898 Act, bankruptcy courts usually looked to State law when determining whether a particular debt for counsel fees was in the nature of alimony or support. See, e. g., DuBroff v. Steingesser, supra, 602 F.2d at 37 (applying N.Y. law); Schiller v. Cornish, supra, 529 F.2d at 1364-65 (applying Ill. law). Appellee contends that Congress rejected this approach in the 1978 Act, relying for this argument on House and Senate Reports which state in part that what constitutes alimony or support "will be determined under the bankruptcy laws, not State law." H.R.Rep.No.95-595, 95th Cong., 1st Sess. 364 (1977), reprinted in (1978) U.S.Code Cong. & Ad.News, 5787, 6320. See also S.Rep.No.95-989, 95th Cong., 2d Sess. 79, reprinted in (1978) U.S.Code Cong. & Ad.News 5865. Accepting appellee's argument as correct, we do not believe that it undercuts the conclusion reached by the bankruptcy court.
 
 
 12
 As Congress undoubtedly was aware, United States courts have no jurisdiction over divorce or alimony allowances. Boddie v. Connecticut, 401 U.S. 371, 389, 91 S.Ct. 780, 792, 28 L.Ed.2d 113 (1971) (Black, J., dissenting); DeLaRama v. DeLaRama, 201 U.S. 303, 307, 26 S.Ct. 485, 50 L.Ed. 765 (1906). "(T)here is no federal law of domestic relations", DeSylva v. Ballentine, 351 U.S. 570, 580, 76 S.Ct. 974, 979, 100 L.Ed. 1415 (1956), "the whole subject of (which) belongs to the laws of the States." Popovici v. Agler, 280 U.S. 379, 383, 50 S.Ct. 154, 74 L.Ed. 489 (1930), (quoting Ex parte Burrus, 136 U.S. 586, 593-94, 10 S.Ct. 850, 852-85, 34 L.Ed. 500 (1980)). Congress could not have intended that federal courts were to formulate the bankruptcy law of alimony and support in a vacuum, precluded from all reference to the reasoning of the well-established law of the States.
 
 
 13
 A husband's obligation to support his wife by providing her with the necessaries of life according to his station has been long recognized as an "unescapable duty", both at common law and by statute. McMains v. McMains, 15 N.Y.2d 283, 288, 258 N.Y.S.2d 93, 206 N.E.2d 185 (1965); see Elder v. Rosenwasser, 238 N.Y. 427, 114 N.E. 669 (1924). An award of attorney's fees may be essential to a spouse's ability to sue or defend a matrimonial action and thus a necessary under the law. Accordingly, most States treat counsel fees as being within the definition of alimony, maintenance, and support. See In re Lang, 11 B.R. 428, 430 n.5 (Bkrtcy.W.D.N.Y. May 29, 1981); In re Knabe, 8 B.R. 53, 56 (Bkrtcy.S.D.Ind.1981). Because the reasoning behind the State decisions is sound, the majority of bankruptcy courts that have considered the matter under the 1978 Act has reached the same conclusion. See In re Lang, supra, 11 B.R. at 430-31; In re Brassard, 11 B.R. 90, at 92-93 (Bkrtcy.N.D.Ill.1981); In re Gilbert, 10 B.R. 347, 351 (Bkrtcy.N.D.Ind.1981); In re Lafleur, 11 B.R. 26, at 29 (Bkrtcy.D.Mass.1981); In re Whitehurst, 10 B.R. 229, 229 (Bkrtcy.M.D.Fla.1981); In re Dorman, 3 Collier's Bankr.Cas.2d 497, 499-501 (D.N.J.1981); In re French, 9 B.R. 464, 468 (Bkrtcy.S.D.Cal.1981); In re Lineberry, 9 B.R. 700, 709-10 (Bkrtcy.W.D.Mo.1981); In re Wells, 8 B.R. 189, 193 (Bkrtcy.N.D.Ill.1981); In re Knabe, supra, 8 B.R. at 56-57; In re Bell, 5 B.R. 653, 655 (Bkrtcy.W.D.Okla.1980); In re Pelikant, 5 B.R. 404, 407-08 (Bkrtcy.N.D.Ill.1980).
 
 
 14
 If the bankruptcy court below was participating in the formulation of a bankruptcy definition of alimony and support, it correctly concluded that defendant's undertaking to pay his wife's legal bill fell within that definition.
 
 THE DISCHARGEABILITY OF THE OBLIGATION
 
 15
 Under subdivision (a)(5)(A) of section 523, a debt to a former spouse for alimony, maintenance, or support is dischargeable if it has been assigned to another entity. The House and Senate Judiciary Committees submitted almost identical interpretations of this subdivision:
 
 
 16
 Paragraph (5) excepts from discharge debts to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of, the spouse or child. This language, in combination with the repeal of section 456(b) of the Social Security Act (42 U.S.C. 656(b)) by section 327 of the bill, will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent. See Hearings, pt. 2, at 942.
 
 
 17
 H.R.Rep.No.95-595, supra at 364.
 
 
 18
 Appellee argues that the phrase "owed directly to a spouse" means, in effect, that the money must be payable to the spouse. See In re Crawford, 8 B.R. 552, 3 Bankr.L.Rep. (CCH) P 67,904, at 78,774 (Bkrtcy.D.Kan.1981); In re Delillo, 5 B.R. 692, 694 (Bkrtcy.D.Mass.1980). In making this contention, appellee overlooks the well-established principle of bankruptcy law that dischargeability must be determined by the substance of the liability rather than its form. See, e. g., Pepper v. Litton, 308 U.S. 295, 305-06, 60 S.Ct. 238, 244-45, 84 L.Ed. 281 (1939); Wetmore v. Markoe, 196 U.S. 68, 72-77, 25 S.Ct. 172, 173-74, 49 L.Ed. 390 (1904). Appellee's argument also overlooks other pertinent legislative history.
 
 
 19
 A joint explanatory statement, issued shortly before Congress passed the 1978 Act, states in part:
 
 
 20
 If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement, property settlement agreement, or divorce proceeding, such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance, or support of debtor's spouse, former spouse, or child.
 
 
 21
 124 Cong.Rec. H11,096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); Id. at S17,412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini). These remarks, offered in lieu of a conference report by the principal sponsors of the Act, are entitled to great weight. See National Woodwork Manufacturers Ass'n v. NLRB, 386 U.S. 612, 640, 87 S.Ct. 1250, 1266, 18 L.Ed.2d 357 (1967) (quoting Schwegmann Brothers v. Calvert Distillers Corp., 341 U.S. 384, 394-95, 71 S.Ct. 745, 750-51, 95 L.Ed. 1035 (1951)).
 
 
 22
 Viewed in the light of this explanatory statement, the House Judiciary Committee's own interpretation of the "owed directly to a spouse" phrase differs from that of appellee. In that portion of the House Report immediately succeeding the language in question, the committee said:
 
 
 23
 This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.
 
 
 24
 H.R.Rep.No.95-595, supra at 364.
 
 
 25
 Section 456(b) of the Social Security Act, referred to in the House Report, provided that child support obligations assigned to a State were not released by a discharge in bankruptcy. In the hearing testimony referred to in the Report, it was suggested that this section was enacted to protect the rights of spouse and child, not the governmental entity involved, but that "judicial interpretation could force another meaning upon that section." To foreclose this possibility, it was urged that the bankruptcy bills be redrafted. Hearing on H.R. 31 and H.R. 32 Before the Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary, 94th Cong., 1st & 2d Sess. 942 (1975-76) (statement of Ernest L. Sarason, Jr.). Appellant asserts that, when the House and Senate bills were redrafted to make "debts assigned to another entity" dischargeable, Congress had in mind assignments to State welfare agencies only. This interpretation is supported by most of the cases. See In re Deblock, 11 B.R. 51 at 53 (Bkrtcy.S.D.Ohio 1981); In re French, supra, 9 B.R. at 467 n.6; In re Wells, supra, 8 B.R. at 192-93; In re Knabe, supra, 8 B.R. at 55; In re Pelikant, supra, 5 B.R. at 408; 3 Collier on Bankruptcy P 523.15(4) (15 ed. 1980).
 
 
 26
 Assuming for the argument that these cases have incorrectly interpreted the congressional intent concerning "assigned" debts, appellant's claim of nondischargeability remains unaffected. We view appellee's undertaking to pay his wife's legal fees as a paradigmatic third party beneficiary contract, which is not, and should not be confused with, an assignment. See 2 Williston on Contracts 815 (3d ed. 1959). In a third party beneficiary contract, benefits flow to both the promisee and the third party, and either may sue to enforce the contract. Associated Teachers v. Board of Education, 33 N.Y.2d 229, 234, 351 N.Y.S. 670, 306 N.E.2d 791 (1973); Nicholson v. 300 Broadway Realty Corp., 7 N.Y.2d 240, 247, 196 N.Y.S.2d 945, 164 N.E.2d 832 (1959); United States Casualty Co. v. Jungreis, 21 App.Div.2d 769, 250 N.Y.S.2d 749 (1964); Rosenblatt v. Birnbaum, 20 App.Div.2d 556 (1963), aff'd, 16 N.Y.2d 212, 264 N.Y.S.2d 521, 212 N.E.2d 37 (1965). If appellee fails to satisfy his obligation to appellant, the third party beneficiary, appellee will, at the same time, fail to satisfy his obligation to his wife, the promisee. If appellee satisfies his obligation to appellant, appellee will by the same act satisfy his obligation to his wife.
 
 
 27
 We conclude that it would be exalting form over substance to fail to treat appellee's agreement to pay his wife's counsel fee as a "debt ... to a spouse ... for alimony ... maintenance ..., or support", and that, therefore, it is nondischargeable in bankruptcy. For holdings in accord, see In re Whitehurst, supra, 10 B.R. at 229; In re French, supra, 9 B.R. at 467-69; In re Demkow, 8 B.R. 554, 555 (Bkrtcy.N.D.Ohio 1981); In re Wells, supra, 8 B.R. at 193; In re Bell, supra, 5 B.R. at 653; In re Pelikant, supra, 5 B.R. at 407-08. The judgment of the district court is reversed and the matter is remanded to the bankruptcy court for further proceedings in accordance with this opinion.
 
 LUMBARD, Circuit Judge (dissenting):
 
 28
 The purpose of a discharge in bankruptcy is to free a debtor from prior claims and give him a fresh start. Debts excepted from discharge, including alimony, are delimited explicitly in the statute, 11 U.S.C. § 523(a), and should not be expanded lightly. For a debt to escape discharge as "alimony," the statute plainly requires that the debt be payable to the ex-spouse and that it really be alimony. Today this court rejects the plain words of the statute, expanding "alimony" to include a debt not to the ex-spouse but to her attorney. I cannot agree.
 
 
 29
 Shirley Spong sued Theodore Spong for divorce in 1977. On July 13, 1979, the parties entered into a stipulation awarding $175 per month to Shirley as alimony and awarding to Raymond Pauley, her attorney, $10,000 in counsel fees. Shirley agreed to pay $6,000; her husband, $4,000 plus costs of $514.40. The stipulation was incorporated in the divorce decree of November 2, 1979. Meanwhile, on October 16, 1979 Theodore Spong had filed a bankruptcy petition listing Pauley's fee, now grown to $4,575, as a dischargeable debt under 11 U.S.C. § 523(a)(5).[1]
 
 
 30
 The statute is set forth in the majority opinion and need not be repeated here. The main portion exempts from discharge only debts payable to a spouse or child. Subparagraph (A) further provides that even non-dischargeable debts are discharged if assigned away by the spouse or child. Plainly, Congress wanted only spouses and children to benefit from § 523(a)(5). Pauley is neither.
 
 
 31
 The majority finds this of no moment. Citing House Hearings, the majority finds that Congress meant to exclude not third parties like Pauley but only state welfare agencies as assignees of a claim. But the House Bill did not have an anti-assignment clause. See H.R. 8200, § 523(a)(5) p. 97, 95th Cong., 1st Sess. (1977); H.R. 8200, § 523(a)(5) p. 98, 95th Cong., 2d Sess. (1978). That clause was added in reaction to the Senate Bill, S. 2266 § 523(a)(6) p. 96, 95th Cong., 2d Sess. (1978). The majority is using House history to explain a clause deriving from a Senate Bill. I find more persuasive the statement in both committee reports that § 523(a)(5) codifies the result in Fife v. Fife, 1 Utah 2d 281, 265 P.2d 642 (1954). See Senate Report No. 95-989, 95th Cong. 2d Sess. 79 (1978); House Report No. 95-595, 95th Cong. 1st Sess. 364 (1977). Fife held that claims by third parties, though incorporated into an annulment decree, were nonetheless discharged in bankruptcy. That holding seems directly applicable to the case before us.
 
 
 32
 Moreover, § 523(a)(5)(B) further limits discharge to those debts "actually in the nature of alimony." Both House and Senate reports state in identical language that "(w)hat constitutes alimony will be determined under the bankruptcy laws, not State law." Senate Report supra, at 79; House Report supra, at 364. The majority reads this passage as permitting their reliance on state law. I disagree. Bankruptcy law is uniform, state law is diverse. When Congress directs us to determine a matter under bankruptcy law, recourse to state law seems inappropriate. It is also an abdication of responsibility. On the majority's reasoning, divorce counsel may collect his fee from the debtor as "alimony" even where the client spouse has been awarded no alimony at all. E. g., In re Trichon, 11 B.R. 658, 4 C.B.C.2d 728, Bankr.L.Rep. (CCH) P 68,048 (Bkrtcy.S.D.N.Y.1981). Finally, the majority expands the alimony exemption to fulfill the state law objective of providing counsel in divorce proceedings. But in so doing, the majority disserves the bankruptcy objective of providing the debtor with a fresh start. This result seems at odds with Congress's command that we follow bankruptcy law.
 
 
 33
 I would affirm the judgment of the district court.
 
 
 
 [1]
 Pauley's claim for $4,575 makes him Spong's largest unsecured creditor. Only Columbia Banking Savings & Loan, which holds a $35,000 mortgage on Spong's house, claims more from the debtor