**In re John F. LYNCH, Debtor.**

**Margaret Lynch CROFT, Plaintiff,**

v.

**John F. LYNCH, Defendant.**

**Bankruptcy Nos. 82–21008, 82–2296A.**

United States Bankruptcy Court,
W.D. New York.

Aug. 18, 1983.

William S. Friedlander, Ithaca, N.Y., for
plaintiff.

Everett C. Weiermiller, Elmira, N.Y., for defendant.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The plaintiff, Margaret Lynch Croft, the former wife of the defendant, John F. Lynch, Chapter 7 debtor, brought this action pursuant to 11 U.S.C. § 523(a)(5) to determine whether or not the $8,900 due to her for what she claims to be maintenance arising out of a separation agreement was a nondischargeable debt.

The plaintiff and the defendant were married March 6, 1976. In 1980, they began to have marital problems and on March 25, 1981, entered into a separation agreement prepared by a lawyer friend of the husband representing both parties. This agreement purported to divide up the property of the parties and provide the wife with support. The paragraphs in question are paragraphs 8 and 9 of the agreement which follow:

8. *Real Property.* The Parties own jointly real property occupied as the marital residence and located at R.D. # 3, West Hill Road, Elmira, New York. The Wife shall have possession of said real property until June 30, 1980, at which time she shall vacate the premises. Husband shall continue to be responsible for payment of the taxes, mortgage, insurance, utilities and all other costs incident thereto. It is agreed between the Parties that the Wife will quit claim her interest in said real · property to the Husband simultaneously with the payment, by Husband, of the first installment of monies due as set forth in Paragraph "9" below.

9. *Maintenance.* Husband agrees to pay the Wife, in three equal installments, the total sum of $10,000.00. The first installment shall be made on July 1, 1980; the second January 1, 1982; and the final installment on April 1, 1982. In consideration therefor, the Wife, in addition to transferring her interest in the real property as hereinbefore set out, hereby waives her right to "maintenance" as

that term is defined in the Domestic Relations Law of the State of New York.

Paragraphs 8 and 9 contain a clerical error. The first installment was obviously due July 1, 1981, and surrender of the premises due June 30, 1981. In any event, the plaintiff, herein, received only $1,100 on the first payment and at that time she quit claimed the real property to the defendant and almost immediately remarried on July 3, 1981. During the trial of the action, the plaintiff testified that she has been sued on some debts her husband agreed to pay and on two occasions judgments have been taken against her. She did not ask for these monies in her complaint, but she asked to amend her complaint to include these items as support due.

■ 11 U.S.C. § 523(a)(5) excepts from discharge only such liabilities for alimony, maintenance or support which are actually in the nature of alimony, maintenance and support. The mere designation on paragraph 9 of maintenance does not make the obligation nondischargeable unless it is actually in the nature of maintenance. What constitutes the nature of alimony, maintenance and support will be determined by the uniform Bankruptcy law and not State law. However, the Bankruptcy law of alimony and maintenance is not to be determined in a vacuum, but must be made with reference to the reasoning of the well established law of the States. (*In re Spong,* 661 F.2d 6, 7–8 (2d Cir.1981)).

New York State Domestic Relations Law § 236 part B(a) defines maintenance as payments provided for in an agreement by the parties or by the court to be paid at fixed intervals for a definite or indefinite period to meet the reasonable needs of a party in a matrimonial action, but such an award shall terminate on the death of a party or upon the recipient's valid or invalid marriage or on modification of the final judgment under Domestic Relations Law § 248. Finally, under New York law, alimony must be fair to provide suitably for the support of a spouse, taking into account the length of marriage and the ability of

each spouse to be self supporting and the other circumstances of the case. It could require monthly, weekly, or lump sum payments or for sums of money to be paid directly to third persons for real and personal property and services to the spouse for rent, mortgage, interest payments, taxes and the like.

■ In the case at bar, it is difficult to determine what the basis for the $10,000 was. Both parties had an interest in the real property. But the real property was highly incumbered by the debtor and the plaintiff to purchase the property in the first instance and to provide the debtor with money for the maintenance of his business in the second instance. No viable proof was offered at the trial as to the real value of that property. Paragraph 9 while contemplating when read with paragraph 8 in the separation agreement, a property settlement also contemplates a payment for the maintenance of the spouse during the separation agreement and after the divorce. The attorney who represented both parties as well as being a friend of the defendant could have used more care in the drafting of that agreement. The agreement does, however, when construed against the debtor at whose instance it was apparently prepared, manifest an intention of the parties that at least some portion of the payments to be made by the debtor were to support the plaintiff. Under state law, she was entitled to support until her remarriage on July 3, 1981. The agreement provided for $10,000 to be paid over a one-year period. An undetermined portion of the $10,000 was clearly a division of the marital residence, but there was uncontroverted testimony to the effect that both parties understood that there was "little, if any equity" in the residence (Transcript, p. 32 line 17). It is thus fair to conclude that only a nominal amount was a property settlement and that the plaintiff's duty to quit claim her interest in the residence on July 1, 1981 was as much tied to her duty to surrender the premises the day before as it was to the debtor's duty to make the first installment. Indeed, the only logical explanation as to why the plaintiff, whose remarriage was

imminent, would quit claim the residence, although she only received $1,100 of the more than $3,300 she was to receive, would be that she did not perceive the $3,300 to be the value of her interest in that residence.

The Court therefore finds the $10,000 to be in the nature of support. By the parties own agreement, then, $3,333.34 was necessary and owing for her support on July 1, 1981. Only $1,100 was paid. The balance of that payment is nondischargeable. Since under state law, her right to support terminated with her remarriage, the other two support payments are discharged.

Therefore, the plaintiff should have a nondischargeable judgment against the defendant in the amount of $2,233.34 and it is so ordered.