OPINION OF THE COURT
Melchor E. Castro, J.
This nonpayment summary proceeding was commenced by the petitioner following termination of the respondent’s Section 8 housing assistance payment subsidy, which was triggered by the petitioner’s refusal to comply with the Section 8 quality housing standards.
42 USC § 1437f, part of the Low-Rent Housing Act (42 USC § 1437 et seq.), provides for assistance to lower income families in obtaining decent housing and generally promotes the creation of economically mixed housing. These subsidies are administered through a public housing agency, which certifies eligible families for participation in the program and enters into Housing Assistance Payment (HAP) contracts with the owners of agency-approved rental housing units, for a direct payment of a portion of the tenant’s monthly rent. For their part, the owners agree to abide by the quality housing standards set by the Department of Housing and Urban Development (HUD) and to maintain the unit in a decent, safe and sanitary condition (see, 24 CFR 882.109). To that end, the rental unit is subject to annual inspection.
The parties apparently entered into an oral lease agreement[1] for the premises at 25 Boston Street, Rochester, New York, for a term beginning March 1991. In addition, the petitioner and the Rochester Housing Authority (RHA), which is the public housing agency serving the Rochester area, entered into a HAP contract on March 1, 1991. The tenancy continued uneventfully, until November 1992, when the petitioner decided to terminate it. In early December, the unit failed its annual inspection. The petitioner was duly notified *750 of the failed inspection, but failed to take any action to remedy the unit’s noncompliance with the quality housing standards.
In February 1993, the RHA terminated payment of the subsidy, based upon the petitioner’s refusal to make the necessary repairs. Upon the continued failure to comply, it later notified the petitioner of the termination of the HAP contract, effective March 1, 1993. The respondent continued to pay the $181 portion of the rent not covered by the Section 8 subsidy.
The respondent argues that by shirking his statutory and contractual obligations, and thereby causing the termination of the contract (and the subsidy payments), the petitioner was able to terminate the tenancy despite statutory and contractual safeguards against termination.
The HAP contract contains lease termination provisions which comply with, and mirror the statutory language (42 USC § 1437f [d] [1] [B] [ii]), as well as the derivative regulations (24 CFR 882.215 [c] [1] [i]). The owner may not terminate the tenancy except where there exists either the serious repeated violation of the terms and conditions of the lease; violation of any Federal, State or local law, which imposes obligations upon the tenant with respect to the occupancy or use of the unit and surrounding premises; or other good cause.
The regulations set out examples of good cause, all of which boil down to good economic reasons, such as the failure of the tenant to accept an offer of a new lease, a history of tenant disturbance of neighbors or destruction of property, living or housekeeping habits resulting in damage to the unit or property, criminal activity involving physical violence to persons or property, or the owner’s need to vacate the unit for personal or family use (24 CFR 882.215 [c] [2]).
The reasons for termination offered by the owner did not constitute good economic reasons. The petitioner was thus not entitled to terminate the tenancy for good cause or any other contractually permissible reason. By choosing to do nothing to remedy the rental unit’s noncompliance with the quality housing standards, the petitioner prompted the public housing agency’s response. While termination of the contract was an option that the agency could consider, other less drastic remedies such as repairing the premises and deducting the cost from the rent could certainly have been exercised. The course that the public housing agency chose to undertake was *751 arguably the most detrimental to the tenant and contrary to the intended purpose of the statute.
While the respondent may have a right of action against the RHA for terminating the HAP contract, no private remedy or right of action was created by the statute on behalf of the tenant against a private owner (cf., McNeill v New York City Hous. Auth., 719 F Supp 233; Smith v Washington Hgts. Apts., 794 F Supp 1141, 1144).
The respondent also asserts that she is the intended beneficiary of the contract between the petitioner and RHA and may, therefore, enforce the contract provisions. A person who is not a party to a valid contract, may nevertheless, enforce the contract upon a showing that the intent of the parties was to directly benefit the third party (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 336). The respondent may prevail only upon a showing that the RHA, as the promisee in its contract with the petitioner intended to give respondent the benefit of the promised performance (Facilities Dev. Corp. v Miletta, 180 AD2d 97; Alicea v City of New York, 145 AD2d 315). The contract states that its purpose is to assist the family to lease a decent, safe and sanitary dwelling unit from the owner.
Where as here, the performance is to be made directly to a third party, a presumption arises that the contract was for the third party’s benefit (Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 108 AD2d 3; Nepco Forged Prods, v Consolidated Edison Co., 99 AD2d 508, citing GoodmanMarks Assocs. v Westburg Post Assocs., 70 AD2d 145).
However, where a contract’s language expressly bars any contractual liability to a third party, no third-party right to enforce the contract may be found. (Schuler-Haas Elec. Corp. v Wager Constr. Corp., 57 AD2d 707; Nepco Forged Prods, v Consolidated Edison Co., supra; Fitzpatrick, Jr. Constr. Corp. v County of Suffolk, 138 AD2d 446; Facilities Dev. Corp. v Miletta, supra.) Paragraph 13 (c) of the contract specifically negates the creation of any right of the family or other third party to enforce the provision of the contract or to assert any claim against the owner under the contract. The plain language of this contract precludes its enforcement by the respondent.[2]
*752 The respondent must nevertheless prevail, based on an implied warranty of habitability theory (Real Property Law § 235-b). The respondent’s answer contains a list of repairs which were deemed necessary to bring the unit into compliance with the quality housing standards. The petitioner did not refute that the conditions needed correction. Chief among the complaints were the need to install or repair smoke detectors, replacement of the front entry door lock set and repair of a leaking waste line in the basement.
The landlord is under a duty to maintain the premises as fit for human habitation. It has been held that a failure to maintain smoke detectors does not implicate the warranty of habitability (Dufur v Lavin, 101 AD2d 319, affd 65 NY2d 830). However, the security of the residents of the unit was severely compromised by the damaged lock set on the front door. What individual can have peace of mind when upon retiring each night he or she knows that the protection of the home can be easily breached. Similarly, the continuing health of the respondent’s family was put in question by the existence of the waste line leak in the basement.
These conditions, which have been in existence since at least December of 1992, are both dangerous and hazardous to the respondent and her family and detrimental to their health and safety. Moreover, the failure to make repair was not caused by the landlord’s simple negligence or economic situation. Rather, the failure to repair was a deliberate means used by the landlord to thwart his contractual responsibilities. Given these factors, the rent is abated in the amount of $376 per month, which represents approximately 68% of the rent. The petition is therefore dismissed.

. Although the regulations provide that the tenant and owner enter into a written lease agreement, no such document was produced at trial, nor was any testimony regarding it offered. Both parties referred to the HAP contract as the lease, although it clearly is not.

. See, McNeill v New York City Hous. Auth. (719 F Supp 233), which finds Section 8 tenants to be third-party beneficiaries. Although that Section 8 contract and the one in question may be similar, no direct comparison was *752 made. And, although the court indicated it was construing Federal common law, it found New York law to be in agreement. However, that court did not discuss New York law as applied to a provision which specifically precluded enforcement of a contract by a third party.