**NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff–Appellee (97–3325)/Cross–Appellant (97–3405),**

v.

**HOME INSURANCE COMPANY, Defendant,**

**Insurance Company of North America; INA Corporation; Cigna Corporation; Cigna International Corporation, Defendants–Appellants (97–3325)/Cross–Appellees (97–3405).**

Nos. 97–3325, 97–3405.

United States Court of Appeals, Sixth Circuit.

Argued June 18, 1998.

Decided Aug. 6, 1998.

Randolph Carson Wiseman, Bricker & Eckler, Columbus, OH; Irene C. Keyse–Walker (argued and briefed), Arter & Hadden, Cleveland, OH; Michael L. Cohen, Scanlan, Rosen & Shar, Baltimore, MD, for Plaintiff–Appellee/Cross–Appellant.

Gerald P. Ferguson (briefed), Vorys, Sater, Seymour & Pease, Columbus, OH; Clifford H. Schoenberg (argued and briefed), Harry P. Cohen (briefed), Philip J. Loree (briefed), Rosenman & Colin, New York City, for Defendants–Appellants/Cross–Appellees.

Before: MERRITT, BOGGS, and SUHRHEINRICH, Circuit Judges.

**OPINION**

BOGGS, Circuit Judge.

Nationwide Mutual Insurance Company ("Nationwide") sued Home Insurance Company ("Home"), INA Corporation, Insurance Company of North America ("INA"), CIGNA Corporation, and CIGNA International Corporation.[1] In its complaint, Nationwide alleged that Home and the CIGNA defendants had breached reinsurance contracts under which they were responsible for paying certain claims filed against Nationwide. Nationwide sought declaratory relief as well as compensatory and punitive damages. The district court stayed Nationwide's claims against Home pending arbitration. The parties do not appeal this ruling.

After the claims against Home were dismissed pending arbitration, the CIGNA defendants sought summary judgment on the claims against them. The district court denied the CIGNA defendants' motion, referred the claims against the CIGNA defendants to arbitration, and dismissed the entire case. This is the ruling that is the subject of the CIGNA defendants' appeal. Nationwide cross-appeals the district court's rejection of its third-party beneficiary argument, which it claims provides an alternative basis for holding that it can bring an action directly against the CIGNA defendants.

I

A. *Nationwide's Reinsurance Agreement With Home*

In the 1960s, Nationwide entered into a reinsurance pool managed by the London firm of M.E. Rutty Underwriting Agency Limited ("Rutty"). As a member of this reinsurance pool, Nationwide authorized Rutty to get, underwrite, and administer direct insurance and reinsurance business. Rutty issued policies and contracts in the name of one of the pool members. The pool member whose name was on the insurance policy or reinsurance contract was directly responsible to the insured. However, the premiums and losses arising from the insurance policies and reinsurance contracts Rutty entered into on behalf of the pool members were divided proportionately among all of the pool members.

Nationwide and some other members of the Rutty Pool withdrew from the pool in 1966. After it withdrew from the pool, Nationwide still had ongoing obligations for continuing and contingent liabilities under insurance policies and reinsurance contracts Rutty issued in its name while it was a member of the pool. To "cut off" its potential future liabilities for insurance and reinsurance obligations arising from its participation in the pool, on June 22, 1977, Nationwide entered into a reinsurance agreement with Home. Under the agreement, Home reinsured[2] Nationwide for "all losses which [Nationwide]

---

1. When discussed collectively, INA Corporation, INA, CIGNA Corporation, and CIGNA International Corporation will be referred to as "the CIGNA defendants."

2. Home entered into the reinsurance agreement with Nationwide through an insurance pool of United States-domiciled insurers called the American Foreign Insurance Association ("AFIA"). AFIA engaged in foreign insurance and reinsurance business on behalf of Home and its other members. Like Rutty, AFIA would issue insurance policies or reinsurance contracts in the name of a member company that was directly liable to the insured or reinsured, but all members of the pool divided premiums and losses proportionately among themselves.

may be or may become liable to pay arising out of risks written for" Nationwide through the Rutty Pool. This reinsurance agreement contained a broad arbitration clause, permitting either party to compel arbitration as to any disputes relating to the agreement.

### B. *The CIGNA Defendants Accept AFIA's Reinsurance Obligations*

On December 31, 1983, the CIGNA defendants entered into purchase and assumption agreements with Home and the other members of AFIA. Under Section 1.1 of the purchase agreement, entitled "Purchase and Sale," the CIGNA defendants agreed to purchase all interests in and rights to the policies and contracts that Home and the other AFIA members entered into through the AFIA pool. This included Home's reinsurance contract with Nationwide for the Rutty Pool liabilities.

In fulfillment of its obligations under Sections 1.1 and 1.4 of the purchase agreement, CIGNA International Corporation caused its subsidiary, INA, to enter into an Insurance and Reinsurance Assumption Agreement ("Assumption Agreement") with Home and the other AFIA members. Under this Assumption Agreement, INA assumed "as its direct obligation and agree[d] to pay on behalf of [Home] when payment thereof is due all insurance and reinsurance liabilities ... included in the AFIA obligations." The Assumption Agreement further provided that "none of the [AFIA members] shall make any payments of any AFIA liability without the prior written approval of INA unless under order of a court...."

The Assumption Agreement between the CIGNA defendants and the AFIA members also contained an arbitration clause nearly identical to the one in the reinsurance agreement between Home and Nationwide, and it included a choice of law clause providing that New York law would govern the agreement. Finally, the Assumption Agreement also stated:

Nothing in this Assumption Agreement, express or implied, is intended, or shall be construed, to confer upon or give to any person, firm or corporation (other than the parties hereto ... ) any rights or remedies under or by reason of this Assumption Agreement, or any term, provision, condition, undertaking, warranty, representation, indemnity, covenant or agreement contained herein....

Some time after the Assumption Agreement was entered into, claims were made on policies Rutty had written in the name of Nationwide. These policies were among those reinsured by Home. The reinsurance on them had passed to the CIGNA defendants through the Assumption Agreement.

### C. *The District Court's Ruling*

In 1995, Nationwide sued Home and the CIGNA defendants, alleging that they had breached contracts under which they were required to cover the claims against Nationwide arising from the policies and contracts from the Rutty Pool. After the claims against Home were stayed pending arbitration, the CIGNA defendants sought summary judgment on the claims against them.

The district court held that Nationwide was not a third-party beneficiary to the agreements between the members of AFIA and the CIGNA defendants. The district court did, however, conclude that Nationwide was an obligee-beneficiary of these agreements and, as such, could pursue a claim directly against the CIGNA defendants for breach of contract under the terms of the Assumption Agreement between Home and the CIGNA defendants. The court reasoned that the CIGNA defendants stood in the shoes of Home as a direct obligor to Nationwide for purposes of the reinsurance contract between Nationwide and Home. The district court further reasoned that the CIGNA defendants had assumed the reinsurance contract between Home and Nationwide and thus were bound by the arbitration provision in that agreement (the same one the district court relied upon to order arbitration of Nationwide's claims against Home). Therefore, the district court denied the CIGNA defendants' motion for summary judgment, referred Nationwide's claims against them to arbitration, and dismissed the entire case.

## II

The central issue on appeal is whether the district court erred in concluding that Nationwide could bring a claim directly against the CIGNA defendants by virtue of the CIGNA defendants' assumption of the reinsurance contract between Nationwide and Home, or whether Nationwide is limited to exercising its rights against Home with respect to payments under this reinsurance contract. The CIGNA defendants argue that Nationwide is precluded from suing them for reinsurance coverage because of the following language:

> Nothing in this Assumption Agreement, express or implied, is intended, or shall be construed, to confer upon or give to any person, firm or corporation (other than the parties hereto ... ) any rights or remedies under or by reason of this Assumption Agreement, or any term, provision, condition, undertaking, warranty, representation, indemnity, covenant or agreement contained herein. . . .

The CIGNA defendants also contend that Nationwide's status as an obligee-beneficiary does not allow them to avoid the preclusive effect of the above-quoted disclaimer.

Nationwide cross-appeals the district court's ruling that it is not a third-party beneficiary of the agreements between Home and the CIGNA defendants. It raises the third-party beneficiary theory only as an alternative basis for allowing it to pursue a claim directly against the CIGNA defendants and does not seek to reverse the court's ruling that the CIGNA defendants are liable under an assumption theory. Nor does Nationwide challenge the district court's order submitting all of the claims against the CIGNA defendants to arbitration.

We hold that the CIGNA defendants are correct in asserting that Nationwide cannot bring suit directly against them (under either a third-party beneficiary theory or an assumption theory) to recover reinsurance benefits they assumed in their agreements with Home and the other members of AFIA.

### A. Nationwide Cannot Bring a Claim Directly Against the CIGNA Defendants

Under New York law, "where a contract's language expressly bars any contractual liability to a third party, no third party right to enforce the contract may be found." *Rosier v. Brown*, 158 Misc.2d 748, 601 N.Y.S.2d 554, 557 (N.Y.Sup.Ct.1993) (citing *Nepco Forged Prods., Inc., v. Consolidated*, 99 A.D.2d 508, 470 N.Y.S.2d 680, 681 (N.Y.App.Div.1984)). This is exactly what the third-party disclaimer provision in the Assumption Agreement between the CIGNA defendants and the members of AFIA does.

Despite Nationwide's valiant efforts to concoct alternative meanings of the third-party disclaimer language that would not preclude it from suing the CIGNA defendants on the reinsurance contract they assumed from Home, we hold that the third-party disclaimer language is clear and unequivocal. It bars any person or entity, except the parties to the Assumption Agreement (the members of AFIA and the CIGNA defendants), from suing on any of the obligations undertaken pursuant to the Assumption Agreement, including the CIGNA defendants' obligation to make payments on the reinsurance contract between Nationwide and Home. Under New York law, contract language is ambiguous "when it is reasonably susceptible to more than one reading." *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir.1998). We do not find reasonable any construction of the disclaimer at issue that seeks to qualify or limit its broad, simple, and absolute language preventing *any* third party from enforcing the Assumption Agreement.

When the members of AFIA assigned their policies and contracts to the CIGNA defendants, they were free to negotiate an agreement under which the CIGNA defendants as assignees would permit direct recourse against themselves if they did not fulfill their obligations under the reinsurance contracts of Home and other members of AFIA. The AFIA members did not do this. Instead, they signed an agreement that expressly excluded insureds from having recourse against the assignees if those assignees failed to satisfy their obligations under

the Assumption Agreement. This left the insureds with exactly the same recourse they would have had if Home and the other members of AFIA had never entered into the Assumption Agreement.

There is nothing wrong with this. Nationwide is not without recourse. It can pursue its claims against Home. If coverage is due, Home will be forced to meet its obligation to Nationwide and then seek indemnification from the CIGNA defendants or Home may implead the CIGNA defendants as third-party defendants to Nationwide's action for reinsurance payments. The insolvency of Home could affect this. However, as we explain below, we need not consider the effects that insolvency may have on the parties' respective rights and obligations because this issue is not yet ripe for review.

■ The district court's holding that Nationwide was entitled to pursue its claims for breach of the assignment agreement directly against the CIGNA defendants was premised on a legally erroneous distinction between obligee-beneficiaries and third-party beneficiaries. Obligee-beneficiaries are simply one type of third-party beneficiaries. 4 Corbin on Contracts § 774 at 6 (7th ed.1989). Therefore, whether or not Nationwide is an obligee-beneficiary is of no legal significance. It is still not a party to the agreement between the members of AFIA and the CIGNA defendants and thus is precluded from bringing a claim directly against the CIGNA defendants to enforce the reinsurance obligations the CIGNA defendants assumed from Home.

Our conclusion that under the circumstances of this case Nationwide cannot be considered a party to the agreement between the members of AFIA and the CIGNA defendants is supported by *Nicholson v. 300 Broadway Realty Corp.*, 7 N.Y.2d 240, 196 N.Y.S.2d 945, 164 N.E.2d 832, 836 (1959). In *Nicholson,* an embossing company entered into an agreement with an adjoining building owner, Nicholson, to furnish steam heat to Nicholson's building. *Id.* 164 N.E.2d at 833. Some years later, the embossing company

assigned this obligation to 300 Broadway Realty, which expressly assumed the obligation to provide steam heat to Nicholson's building, but failed to do so. *Id* 164 N.E.2d 832 at 834–36. Nicholson then sued 300 Broadway Realty under the contract Broadway had assumed. The New York Court of Appeals held that, for purposes of the assumption contract, the embossing company was the promisee, 300 Broadway Realty was the promissor, and Nicholson was a "third-party beneficiary." [3] *id.*

■ It is clear that the disclaimer barring third parties from enforcing rights under the contract applies to Nationwide. Nationwide argues that it should be deemed beyond the scope of the disclaimer because the CIGNA defendants directly assumed Home's reinsurance obligation to Nationwide in the sense that they agreed to make payments directly to Nationwide and other insureds. This argument fails, however, because whether or not there was a direct assumption does not alter the decisive fact that Nationwide is a stranger to the Assumption Agreement through which it seeks to impose liability upon the CIGNA defendants.

Since Nationwide cannot bring suit directly against the CIGNA defendants on the Assumption Agreement or any obligations assumed therein, it cannot compel the CIGNA defendants to submit to arbitration under the terms of a contract they assumed in the Assumption Agreement with the members of AFIA.

### B. *Nationwide's Cross–Appeal*

■ Our resolution of the CIGNA defendants' appeal also disposes of Nationwide's cross-appeal regarding the district court's holding that Nationwide is not entitled to bring a claim directly against the CIGNA defendants under a third-party beneficiary theory. Nationwide is a third party to the Assumption Agreement in the same generic sense as every individual and entity on earth (other than the members of AFIA and the CIGNA defendants), in that it is not a party

---

3. Although Nationwide is a third party to the Assumption Agreement in the sense that it is not a party to it, for reasons explained below, unlike Nicholson, Nationwide cannot be classified as a third-party *beneficiary* entitled to bring suit to enforce an agreement to which it is not a party.

to the agreement. As such, the disclaimer provision precludes it and all other third parties to the contract from enforcing it. By precluding any third party from enforcing the agreement, this same disclaimer defeats Nationwide's claim that it belongs to the discrete subset of generic third parties referred to as third-party beneficiaries, whose distinguishing characteristic is their legal right to enforce contracts to which they are not a party. *See Rosier v. Brown,* 158 Misc.2d 748, 601 N.Y.S.2d 554, 557 (N.Y.Sup. Ct.1993) (citing *Nepco Forged Prods., Inc. v. Consolidated,* 99 A.D.2d 508, 470 N.Y.S.2d 680, 681 (N.Y.App.Div.1984)). Accordingly the district court was correct to hold that Nationwide is not a third-party beneficiary.

#### C. *Issues Relating to the Insolvency Clause are not Ripe for Decision*

■ Finally, we refuse the CIGNA defendants' invitation to rule on the effects the insolvency clause of the Assumption Agreement may have on Nationwide's ability to pursue coverage under its reinsurance agreement with Home. Issues related to insolvency are not yet ripe for consideration on the merits. Home is not insolvent at this time. A basic tenet of the doctrine of ripeness is that "a matter is considered premature for judicial review when the alleged injury is speculative or may never occur." *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1068 (6th Cir.1998) (citing *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

### III

The judgment of the district court submitting Nationwide's claims against the CIGNA defendants to arbitration and dismissing the case is REVERSED. The claims against the CIGNA defendants cannot be submitted to arbitration because the express disclaimer in the Assumption Agreement prevents Nationwide from suing the CIGNA defendants to enforce the reinsurance obligations the CIGNA defendants assumed from Home. We remand the case to the district court to enter an order dismissing Nationwide's claims against the CIGNA defendants.