**In re Harry A. WADLEIGH, Debtor.**

**Marilyn M. WADLEIGH and William L. Nikas, Esq., Plaintiffs,**

**v.**

**Harry A. WADLEIGH, Defendant.**

**Bankruptcy No. 85–213.**
**Adv. No. 86–08.**

**United States Bankruptcy Court, D. Vermont.**

**July 14, 1986.**

J. Anderson, Rutland, Vt., for William L. Nikas.

T. Maikoff, Rutland, Vt., for debtor/defendant.

### ORDER DISMISSING COMPLAINT FOR EXCEPTION TO DISCHARGE

FRANCIS G. CONRAD, Bankruptcy Judge.

This is an exception to discharge proceeding under 11 U.S.C. section 523(a)(5). Because the intent of the parties shows the obligation listed in the debtor's petition to be part of a property settlement, we dismiss the complaint.

The following facts were established at trial:

1) The Plaintiff Marilyn M. Wadleigh is the debtor's former spouse.

2) The Plaintiff William L. Nikas is an attorney admitted before the courts of the State of New York. He was counsel to Mrs. Wadleigh in her New York divorce proceeding.

3) The Wadleighs were divorced on June 20, 1985 by virtue of a decree from the Supreme Court of the State of New York.

4) Within the final divorce decree, the debtor is ordered to pay to William Nikas, Esq., the sum of $1,000.00 as and for counsel fees of Mrs. Wadleigh.

5) If the amount of $1,000.00 is not paid within six (6) months of June 20, 1985, Attorney Nikas would be entitled to enter a judgment against the debtor for the sum of $1,500.00. This judgment is the subject of this proceeding.

6) A dual divorce was granted by reason of the cruel and inhuman treatment of the plaintiff by the debtor, and by reason of the cruel and inhuman treatment of the debtor by the plaintiff.

7) The decree of divorce contains no mention of alimony or maintenance or support.

8) A stipulation attached to the decree of divorce and incorporated, but not merged, contains no mention of alimony or maintenance or support.

9) The debtor testified, and we find, that the purpose of the dual divorce was to bar Mrs. Wadleigh from obtaining alimony.

10) During the pendency of the divorce action, the Court awarded temporary alimony to Mrs. Wadleigh in the amount of $45.00 per week.

11) The temporary alimony awarded also included $250.00 for attorney's fees. The award was paid by the debtor to Nikas.

12) After the award in finding # 10, the Court denied a subsequent motion for increased child support to Mrs. Wadleigh. The Court awarded no counsel fees for this motion.

13) The testimony of Nikas shows, and we find, that Mrs. Wadleigh intentionally waived any post-divorce alimony for a better property settlement.

14) The debtor testified, and we find, that he agreed to the stipulation to settle the contested divorce action provided Mrs. Wadleigh would not go after his social security and pension. The stipulation contemplated that she would not receive alimony, but would instead receive a better property settlement. The stipulation was incorporated, but not merged, into the final judgment for divorce.

15) The $1,000.00 for counsel fees did not include the $250.00 previously awarded by the temporary alimony order of March 29, 1983.

16) The testimony of Nikas shows that about 95% of his services were directed toward trying to obtain alimony for Mrs. Wadleigh.

17) No testimony was received at the final divorce hearing on the financial ability of Mr. Wadleigh to pay the $1,000.00 or the $1,500.00 to Nikas.

18) The fee of $1,000.00 to be paid to Nikas is a negotiated sum.

19) The difference between the $1,000.00 fee and the right to enter a judgment against the debtor for $1,500.00 was negotiated to encourage the debtor to pay the award quickly.

The plaintiffs in this proceeding are Mrs. Wadleigh, former spouse of the debtor, and her former attorney, William Nikas. Mrs. Wadleigh is a party because plaintiff's counsel had some doubt about Nikas' standing to object to the discharge of a debt allegedly for alimony, support, or maintenance even thought the debtor's counsel readily conceded Nikas' standing to maintain the proceeding.

Nikas, obviously, is not the former spouse of the debtor. Yet it is clear that if the debt objected to is not discharged on the grounds it is alimony, maintenance, or support, the benefits will flow directly to Nikas and not to Mrs. Wadleigh. It is equally clear that Mrs. Wadleigh is the person to whom the promise to pay runs. This relationship creates the classic third party beneficiary contract, enhanced by judicial approval of the arrangement. *Pauley v. Spong, (In re Spong)*, 661 F.2d 6, 10 (2d Cir.1981) (A debtor's undertaking to pay a spouse's legal fees within a divorce proceeding is a paradigmatic third party beneficiary contract.) A third party beneficiary, as here, may enforce the contract for his benefit. See *Lawrence v. Fox*, 20 N.Y. 268. This is not to say that Mrs. Wadleigh could not file a separate adversary proceeding objecting to the discharge of the debt for her counsel's fees. As a general principle of contract law, a promise may be enforced by the promisee. The stipulation to pay counsel fees in a divorce proceeding is normally between the parties. The basis of such an agreement is that one spouse owes an attorney fees and the other simply agrees to pay the obligation. In this case, Mrs. Wadleigh's right to enforce the contract is clearly intended because the agreement to pay counsel fees is incorporated, but not merged, into the judgment for divorce. Consequently, it survives as a separate and enforceable contract.

This proceeding is predicated on 11 U.S.C. Section 523(a)(5), which states:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt— ...
(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement, but not to the extent that—(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Securi-

ty Act, or any such debt which has been assigned to the Federal Government or to a state or any political subdivision of such State); or (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

Counsel for the plaintiffs argues that the facts of this proceeding are exactly the same as in *Spong, supra,* and that *Spong* stands for the proposition that "a debtor's agreement to pay his former wife's counsel fees in connection with a divorce proceeding which is incorporated into a divorce decree is a debt .. to a spouse for alimony ... maintenance or support within the meaning of 11 USC Section 523(a)(5) and, therefore, is non-dischargeable." Plaintiffs' memorandum of law to support Summary Judgment motion, pg. 2.

Admittedly this proceeding and *Spong, supra,* are similar. Both involve a contested divorce proceeding in New York that was ultimately settled by stipulation between the parties. The stipulations provided for a property settlement and payment of the wife's attorney's fees by a debtor. No alimony was awarded in either action. At this juncture, however, the similarity ends.

The specific issue in *Spong* at the appellate level was not whether the payment of counsel fees was alimony, maintenance, or support, but whether an obligation running to a third party that was found to be in the nature of alimony, maintenance, or support was non-dischargeable under section 523(a)(5). The Second Circuit in *Spong, supra,* held that a debt in the nature of alimony, maintenance, or support payable to an attorney was non-dischargeable.

The critical question for us is the nature of the obligation running to the counsel for the debtor's former spouse. The facts of this case, supported by testimony of all parties and admitted exhibits, support a finding that the debt due Nikas by the debtor is in the nature of a property settlement, not for alimony, maintenance, or support, and thus is dischargeable under the Bankruptcy Code. Unfortunately, the decision in *Spong, supra,* is clouded by Judge Lumbard's dissent interpreting *Spong, supra,* to mean that "divorce counsel may collect his fee from the debtor as 'alimony' even when the client spouse has been awarded no alimony at all." We do not think this is what *Spong, supra,* holds.

While the final version of section 523(a)(5) contains segments of the original House and Senate bills,[1] the enacted version is so substantially different that use of the earlier legislative history to illuminate the meaning of the statute may result in contradictory meanings being gleaned from the statutory provision.

The dissent in *Spong* relies on the earlier legislative history and seems to imply that "[w]hat constitutes alimony will be determined under the bankruptcy laws, not State law." *Spong,* at 11 (dissent), citing the Senate Report, Senate bill, S. 2266, section 523(a)(6), at 79, 95th Cong. 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5865. But the better view is exactly what is stated in the joint explanatory remarks of Rep. Edwards and Sen. DeConcini to the final version of section 523(a)(5) that such debt is dischargeable to the extent that payment of the debt by the debtor *is not actually in the nature of alimony, maintenance, or support of debt-*

---

1. The original House version of section 523(a)(5) is as follows: "... (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child ..." HR–8200 (Report No. 95–595) (July 11, 1977). The original Senate version of section 523(a)(5) is as follows: "... (6) any liability to a spouse or child for maintenance or support, or for alimony due or to become due, in connection with a separation agreement or divorce decree. A debt shall not be excepted from discharge, however, solely because the spouse is obligated in any manner to pay the debt, and except that if such maintenance, support or alimony award includes liability for debts accrued prior to the separation agreement or divorce decree then the court may determine that such debts may be discharged ..." S. 2266 (Report No. 95–989) (Report No. 95–1106) (October 31, 1977) U.S.Code Cong. & Admin.News 1978, p. 5787.

or's spouse, former spouse or child. 124 Cong.Rec.H. 11096 (daily ed. Sept. 28, 1978); Section 17412 (daily ed. October 6, 1978).

The legislative statement, to which we must give great weight, *National Woodwork Manufacturers Association v. NLRB*, 386 U.S. 612, 640, 87 S.Ct. 1250, 1266, 18 L.Ed.2d 357 (1967) (quoting *Schwegmann Brothers v. Calvert Distillers Corp.*, 341 U.S. 384, 394–95, 71 S.Ct. 745, 750–51, 95 L.Ed. 1035), indicates that our inquiry must be into the substance and not the form of the agreement.

■ The inquiry must be made with reference to State law because "Congress could not have intended that Federal Courts were to formulate the bankruptcy law of alimony and support in a vacuum, precluded from all reference to the reasoning of the well-established law of the State." *Spong*, at 9. On the other hand, the proceeding arises within a bankruptcy case and must be decided under bankruptcy law. The question then is: what is the substantive law to be applied under 11 U.S.C. Section 523(a)(5)? We conclude that the substantive law to apply is the Bankruptcy Code as it pertains to the dischargeability of a debt, consistent with the purposes of section 523(a)(5), but fathomable within the confines of the State law within which the agreement arose.

New York State has long recognized that counsel fees and expenses may be awarded in a divorce action or proceeding, Domestic Relations Law, Section 237, McKinney's Consolidated Laws of New York, and that such awards are addressed to the discretion of the court under the facts and circumstances of the case and relative circumstances of the parties. *Thompson v. Thompson*, 44 A.D.2d 849, 355 N.Y.S.2d 633 (Ct.Appls.N.Y.1974). One of the circumstances the court is required to consider is the financial state of affairs of both parties before awarding counsel fees in a divorce action. *Marocco v. Marocco*, 53 A.D.2d 707, 383 N.Y.S.2d 939 (Ct.Appls.N.Y.1976). In this case, the New York Court made no inquiry into the debtor's financial circumstances. We must assume that the court relied only on the naked stipulation of the parties when it awarded counsel fees to the debtor's former spouse.

We are better informed about the financial circumstances of the debtor than the New York Court because the testimony in the proceeding is replete with proof that the debtor was unable to pay his wife's counsel fees. Had the New York Supreme Court Judge been better informed of the financial circumstances of the debtor, we doubt that it would have awarded counsel fees to the debtor's spouse. The debtor's subsequent filing of bankruptcy is the ultimate proof that he was unable to pay them.

Finally, the plaintiffs argue that *Spong, supra,* stands for the absolute proposition that "a debtor's agreement to pay his former wife's counsel fees in connection with a divorce proceeding which is incorporated into a decree of divorce is a debt ... to a spouse for alimony, maintenance or support within the meaning of 11 U.S.C Section 523(a)(5) and, therefore, is non-dischargeable." Plaintiff's memorandum, supra. The argument is buttressed by the dissent's interpretation of the majority opinion in *Spong, supra,* that "divorce counsel may collect his fee from the debtor as 'alimony' even where the client spouse has been awarded no alimony at all." We think that the dissent's statement may be correct under certain facts and circumstances, but it is not the holding in *Spong, supra.* Nor can *Spong, supra,* stand for the absolute proposition that counsel's fee in connection with a divorce is always alimony, maintenance or support.

■ *Spong*, and the New York Domestic Relation Law, section 237, supra, requires us to determine if the award of counsel fees to the debtor's spouse was a necessary concomitant to her ability to defend or maintain her matrimonial action, and therefore an unescapable duty of the debtor to support his former spouse. As we indicated earlier, the facts and circumstances of this case support a finding that the agreement to pay counsel fees to the debtor's spouse was a property settlement.

The specific facts show the former spouse was granted counsel fees on one support motion but not another. The parties settled the divorce action because the former spouse would receive a better property settlement, but no alimony. Neither the stipulation, nor the final decree, mention alimony or maintenance or support. The intent of the parties was that the payment due to Nikas was part of a property settlement, and not for alimony, maintenance, or support.

Accordingly,

It is ORDERED that the complaint be and hereby is DISMISSED.