**In re Leonard ROSEN, Debtor.**

**Janet SCULLER f/k/a Janet Rosen and Nagel & Rice, Plaintiffs,**

**v.**

**Leonard ROSEN, Defendant.**

**Bankruptcy No. 191–10755–260.**
**Adv. No. 191–1284–260.**

United States Bankruptcy Court,
E.D. New York.

July 12, 1994.

Zivyak Adler Klein & Liss by Jeffrey L. Zivyak, New York City, for debtor.

Nagel & Rice by John A. Stone, Livingston, NJ, for plaintiffs.

## DECISION ON MOTIONS FOR AN ORDER OF CONTEMPT PURSUANT TO RULE 9020 AND DISCOVERY SANCTIONS PURSUANT TO RULE 7037 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT.

CONRAD B. DUBERSTEIN, Chief Judge.

This is an adversary proceeding in which the plaintiffs, Janet Sculler ("Sculler") and Nagel & Rice, Esqs. (collectively, the "Plaintiffs") seek to have their claims against the defendant, Leonard Rosen, the debtor herein, ("Rosen" or the "Debtor" or the "Defendant") deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(5) as debts arising out of orders entered in a matrimonial action in the State of New Jersey between the Debtor and his former wife, Janet Sculler.

The instant matter before this Court concerns: (1) the Debtor's motion for an order of civil contempt pursuant to Rule 9020(b) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") with respect to the failure of Janet Sculler's husband, Leonard Sculler, to attend a deposition as a third-party witness pursuant to a duly served subpoena issued in this adversary proceeding; and (2) the Debtor's second motion seeking

various discovery sanctions pursuant to Fed. R.Bankr.P. 7037 for the Plaintiffs' failure to appear for duly noticed depositions. Both motions also seek monetary sanctions. Plaintiffs have cross-moved for partial summary judgment, seeking a declaration that legal fees awarded by the state court in the matrimonial action are nondischargeable, and such other relief as this Court deems just and proper.

## FACTS

On June 15, 1988, Judge Lawrence Lerner of the Superior Court of New Jersey granted a final judgment of divorce dissolving the marriage of plaintiff, Janet Sculler, then Janet Rosen, and Leonard Rosen, the Debtor herein. The judgment, provided *inter alia*, for an equitable distribution of the marital property, and ordered the Debtor to make child support payments to his former wife and pay certain legal fees. She was not awarded alimony or maintenance. Additionally, as set forth below, pursuant to other orders of the matrimonial court, she was awarded additional counsel fees and disbursements and the Debtor was directed to pay $1000 directly to the firm of Nagel & Rice, Esqs., her attorneys in the matrimonial action.

On February 8, 1991, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code (the "Code"). In his petition he scheduled the debts arising out of the aforementioned state court orders.

Shortly thereafter, Plaintiffs commenced the instant adversary proceeding seeking to have the debts owed to Sculler and Nagel & Rice deemed nondischargeable pursuant to sections 523(a)(4)[1] and 523(a)(5)[2] of the Code, and also to have the Debtor's discharge denied pursuant to section 727.[3] The original complaint contained fourteen separate claims for relief. The Debtor denied essentially all of the allegations charged in the complaint and simultaneously filed a motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), made applicable to bankruptcy proceedings pursuant to Fed.R.Bankr.P. 7012, to dismiss certain claims for relief based on sections 523(a)(4) and 727 of the Code upon the grounds that each claim failed to plead fraud with sufficient particularity as required by Fed.R.Civ.P. (9)(b). In opposition, the Plaintiffs made a cross-motion requesting the denial of the Debtor's motion, or in the alternative, for leave to amend their complaint pursuant to Fed.R.Civ.P. 15.

On November 6, 1991, this Court entered an order based on its decision of October 21, 1991, dismissing the seventh, eighth, ninth, eleventh, thirteenth, and fourteenth claims for relief in Plaintiffs' original complaint for failure to plead fraud with sufficient particularity, with leave to amend the complaint. *Sculler v. Rosen (In re Rosen )*, 132 B.R. 679 (Bankr.E.D.N.Y.1991).

Of the remaining claims for relief, the first through fourth sought legal fees awarded to Sculler pursuant to the judgment of divorce dated June 15, 1988, and state court orders dated November 4, 1987, October 11, 1989, July 25, 1990, and August 31, 1990, as follows:

(1) The November 4, 1987 order directed the Debtor to pay to Nagel & Rice $40,000 for counsel fees and costs and to pay to Sculler $12,000, which would enable her to satisfy an outstanding arbitration award.

(2) The judgment of divorce order dated June 15, 1988, directed the Debtor to pay Sculler's legal fees due Nagel & Rice through March 26, 1988. The order did not set forth the amount of the fees.

(3) The October 11, 1989 order amended the June 15, 1988 order to set forth the sum of $32,702 as the fees and disbursements awarded to Nagel & Rice.

(4) The orders dated July, 25, 1990 and August 31, 1990, awarded Sculler additional

---

**1.** Section 523(a)(4) refers to debts excepted from discharge for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

**2.** Section 523(a)(5) refers to debts excepted from discharge, in pertinent part, to a spouse, or former spouse, for alimony or maintenance in connection with a divorce decree or other order of a court of record.

**3.** Section 727 sets forth the grounds for objections to discharge.

sums of $10,000 and $13,514.27 respectively for counsel fees and costs due Nagel & Rice.

The fifth claim for relief seeks $1,000 the Debtor was ordered to pay to Nagel & Rice pursuant to the state court's order dated February 22, 1990.

The Plaintiffs allege that the legal fees awarded as set forth above all related to the dissolution of the Rosen marriage and constitute nondischargeable support pursuant to 11 U.S.C. § 523(a)(5).

The sixth claim for relief alleges that the Debtor failed to turnover one-half of $50,000 in municipal bonds as he was required to do pursuant to the state court's equitable distribution direction.

The tenth claim for relief alleges that the Debtor failed to account for, and turnover to, Sculler the Bat Mitvah funds of their daughter, as he was required to do pursuant to the state court's equitable distribution direction.

The twelfth claim for relief alleges, upon information and belief, that the Debtor reduced his interest in certain assets, including his accounting firm, and thereby violated the terms of the judgment of divorce which enjoined him from transferring, mortgaging, hypothecating, or disposing of his interest in certain assets.

On June 17, 1992, Plaintiffs filed an amended complaint, which Debtor's counsel asserted was technically defective and was consequently withdrawn. On August 24, 1992, Plaintiffs filed a second amended complaint containing nine causes of action seeking a determination that the underlying obligations are nondischargeable pursuant to sections 523(a)(4) or 523(a)(5). The first eight claims represent the first through sixth, tenth, and twelfth claims for relief as alleged in the original complaint. The ninth claim for relief alleges that the Debtor breached a fiduciary duty owed to Sculler by virtue of the judgment of divorce by: pledging as collateral for a loan the municipal bonds which were to be turned over to Sculler, the default on which resulted in foreclosure of the bonds; using their daughter's Bat Mitvah funds for his own use; and re-ducing his interest in certain assets including his accounting firm and a Vermont residence.

In response, the Debtor filed a motion pursuant to Fed.R.Civ.P. 12(b)(6), made applicable to bankruptcy proceedings pursuant to Fed.R.Bankr.P. 7012, to dismiss the amended complaint for failure to state a claim upon which relief can be granted and argued, for the first time, that Sculler's new husband had made substantial payments to Nagel & Rice on her behalf, thereby creating an assignment of a debt which would be dischargeable pursuant to section 523(a)(5)(A) of the Code. In support of this allegation the Debtor points to the Plaintiffs' papers from which it appears that at least some of the legal fees the Debtor was ordered to pay have been paid by Mr. Sculler. The Plaintiffs' Brief provides that

> Sculler will clearly receive a present benefit if Rosen finally fulfills his obligations. Her family's financial resources were depleted as a result of Rosen's refusal to obey the New Jersey Court's Order. *The monies paid by her new husband, which paid some of the attorneys' fees,* will be returned for her benefit upon Rosen's full payment of attorneys' fees.

Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss "Second" Amended Complaint at page 3 (emphasis added). The exact amount paid is not disclosed.

By order dated April 20, 1993, this Court denied the Debtor's motion to dismiss with respect to the first eight claims but dismissed, with leave to amend, the Plaintiffs' ninth claim for relief for failure to state a claim upon which relief can be granted.[4]

On May 28, 1993, the Plaintiffs filed a third amended complaint which re-stated the first eight claims for relief and set forth the ninth claim dealing with the alleged breach of fiduciary acts by the Debtor with greater specificity. The Debtor's answer generally denied the allegations in the complaint and asserted three affirmative defenses: (1) that all or substantially all of the legal fees referenced in the complaint were paid to Nagel & Rice by Sculler's second husband, Leonard Sculler, resulting in an assignment to Leonard

---

4. *Sculler v. Rosen (In re Rosen),* 151 B.R. 648    (Bankr.E.D.N.Y.1993).

Sculler, which pursuant to section 523(a)(5)(A) of the Code, is dischargeable; (2) that the failure to turnover property as set forth on counts six, eight, and nine arose out of a dischargeable property settlement; and (3) that Sculler lacks standing to pursue a claim for their daughter's Bat Mitvah funds because she had attained majority at the time of the entry of the order for relief in the Debtor's bankruptcy.

Thereafter, the Debtor filed the motions currently before this Court as heretofore referred to, one seeking an order of civil contempt pursuant to Fed.R.Bankr.P. 9020(b) with respect to Leonard Sculler's alleged wilful failure to attend a deposition pursuant to a duly served subpoena and the second seeking discovery sanctions pursuant to Fed. R.Bankr.P. 7037 for the Plaintiffs' alleged wilful failure to appear for duly noticed depositions. Both motions also seek monetary sanctions.

In his Rule 9020(b) contempt motion, the Debtor states that in the course of defending the within adversary proceeding, he caused a subpoena to be issued and served upon Leonard Sculler for the purpose of conducting Mr. Sculler's deposition on July 29, 1993. From the proof of service submitted to this Court it appears that Mr. Sculler had in excess of twenty days notice of the deposition. The motion papers set forth that a secretary to Mr. Sculler's counsel contacted Zivyak Adler Klein & Liss, the Debtor's counsel, by telephone several days before the scheduled deposition to request an adjournment. The caller was told that because the firm's administrative staff was not empowered to grant adjournments it would be necessary for Mr. Sculler's attorney to telephone Jeffrey Zivyak, Esq. ("Mr. Zivyak") directly to request the adjournment. Carleton Kemph, Esq. ("Mr. Kemph"), of Hannoch Weisman, Esqs., Mr. Sculler's counsel, faxed a letter to Mr. Zivyak explaining the need for an adjournment and asking to be informed as to when would be a good time for him to contact Mr. Zivyak to verify the adjournment.[5] Mr. Zivyak replied by a letter dated July 26, 1993, in which he stated that he "s[aw] no reason to extend any courtesy whatsoever to [Hannoch Weisman] or to Mr. Sculler and that includes adjourning the currently scheduled deposition."[6] The letter further provided that in the event that Mr. Sculler did not attend the deposition as scheduled, Mr. Zivyak would seek to have the matter certified as contempt. Neither Mr. Sculler nor his attorney appeared for the deposition.

The Debtor's second motion seeks discovery sanctions pursuant to Fed.R.Bankr.P. 7037 for the Plaintiffs' alleged wilful failure to appear for duly noticed depositions. Specifically, it seeks an order dismissing the complaint for the Plaintiffs' failure to appear for duly noticed deposition, or in the alternative, imposing evidentiary sanctions in the form of conclusive presumptions in favor of the Debtor-defendant and/or preclusion of Plaintiffs with respect to certain issues of fact, monetary sanctions, and such other relief as this Court deems just.

The exhibits attached to the Debtor's motion papers reveal that on June 17, 1993, the Plaintiffs were served with notices that their depositions were scheduled for July 20, and 21, 1993. However, it appears that Mr. Zivyak received a telephone call on July 19, 1993, from Bruce Nagel, Esq. ("Mr. Nagel"), a member of Nagel & Rice, seeking an adjournment of the scheduled depositions. Mr. Zivyak alleges that he "felt no compunction in denying [Mr. Nagel] any adjournments" because during his last conversation with Mr. Nagel, while attempting to settle the dispute, Mr. Nagel "replied in a scatological fashion and hung up the phone."[7] Mr. Zivyak informed Mr. Nagel of his intention to have a reporter present on July 20th and 21st. Later that day, Mr. Nagel faxed a letter to Mr. Zivyak confirming his unavailability for the

**5.** *See* Notice of Motion for Order of Contempt, filed August 5, 1993, at Exhibit B.

**6.** *See Id.* at Exhibit C.

**7.** Affidavit in Support of Motion Pursuant to Bankruptcy Rule 7037, filed August 5, 1993, at ¶ 3 page 3. Mr. Nagel denies Mr. Zivyak's recol-

lection of their telephone conversation and states that Mr. Zivyak responded to the request for an adjournment "with a barrage of cursing, screaming, and eventually a terminated conversation." Affidavit of Bruce H. Nagel Esq., sworn to August 24, 1993, at ¶ 4.

scheduled depositions and suggested that in light of such unavailability, Mr. Zivyak not incur the expense of having a reporter present. The Plaintiffs did not attend the scheduled depositions.

As appears from the above, the Plaintiffs and Mr. Sculler each requested one adjournment of their scheduled depositions and the Debtor responded to such requests with motions for contempt and discovery sanctions against them. Such response is of concern when considered in light of the divorce proceedings held April 8, 1988, before Judge Lerner. The transcript of those proceedings reveals that the Judge repeatedly commented on Rosen's "interesting approach with regard to discovery." [8] Specifically, the Judge noted that although Rosen was himself an expert in accounting and a witness in many matrimonial matters, his answers to interrogatories were "inadequate, insufficient and d[id] not comply with full disclosure." The court found that the information presented to it by Rosen listed some assets, omitted others, and if a value was assigned to listed assets such value "border[ed] on the ridiculous." Moreover, the court stated that Rosen was the "culprit" who was "responsible for the delay" and specifically found "his answers in depositions to be evasive intended to thwart discovery—open discovery of information upon which the parties may have properly made their presentations to this court." The court also found that Rosen's income was "substantially greater than what he says he's earning."

In response to the motions for contempt and discovery sanctions, the Plaintiffs have cross-moved for partial summary judgment, seeking a declaration that the legal fees awarded as set forth above are nondischargeable, and such other relief as this Court deems just and proper. The Debtor has

opposed Plaintiffs' motion for summary judgment procedurally on the grounds that it lacks the statement required pursuant to Rule 22(b) of the Local Rules of the United States Bankruptcy Court for this District,[9] setting forth the material facts as to which they contend there is no genuine issue to be tried. The Debtor's Local Rule 22(b) statement opposes the Plaintiffs' motion substantively by setting forth disputed issues of material fact requiring trial. The issues as outlined by the Debtor include: whether the legal fees awarded were intended as support for Sculler and/or any minor children or a property settlement; whether or not Sculler's attorneys have been paid and if so, by whom; and whether or not Sculler assigned by contract or operation of law her right to recover the said legal fees.

## DISCUSSION

### A. Cross–Motion for Partial Summary Judgment

A motion for summary judgment is governed by Fed.R.Civ.P. 56, made applicable to bankruptcy proceedings pursuant to Fed. R.Bankr.P. 7056, which provides in pertinent part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56.

In ruling on a motion for summary judgment, it is the court's function to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues.

---

**8.** Transcript dated April 8, 1988, annexed to Affidavit of Bruce H. Nagel, Esq. at Exhibit C. The quotes accompanying this text are all contained in Exhibit C.

**9.** Local Rule 22(b) provides:
Motions for Summary Judgment. Upon any motion for summary judgment, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends

there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–51, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986); *Eastman Mach. Co. v. United States,* 841 F.2d 469, 473 (2d Cir. 1988); *Bank of India v. Sapru (In re Sapru ),* 127 B.R. 306, 319 (Bankr.E.D.N.Y. 1991).

Plaintiffs, as the movants for summary judgment, bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *In re Sapru,* 127 B.R. at 319.

When determining whether there is a genuine issue of material fact, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962)), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The court's responsibility is to resolve ambiguities and draw reasonable inferences against the moving party to determine whether there exists any factual issues to be tried. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). A motion for summary judgment must be denied when there is a genuine issue as to any material fact, and it must be granted when there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Anderson,* 477 U.S. at 247–51, 106 S.Ct. at 2509–12; *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991); *Kenston Mgt. Co. v. Lisa Realty Co. (In re Kenston Mgt. Co.),* 137 B.R. 100, 108 (Bankr.E.D.N.Y.1992).

*The Dischargeability of the Obligations*

■ Section 523(a)(5) of the Code excepts from discharge any debt—

to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce

decree or other order of a court of record . . . but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise . . . ;

or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5). "The spouse seeking a determination that an obligation is nondischargeable on the grounds that it was actually in the nature of alimony maintenance or support, has the burden of proof." *Mackey v. Kaufman (In re Kaufman ),* 115 B.R. 435, 439 (Bankr.E.D.N.Y.1990).

■ In the instant matter, Plaintiffs' motion for partial summary judgment necessarily rests on the nature of the legal fees awarded. Because if the obligation to pay the legal fees is in the nature of alimony, maintenance, or support, it is nondischargeable. However, to the extent the obligation is characterized as a property settlement it is dischargeable. *See Friedman v. Silberfein (In re Silberfein ),* 138 B.R. 778, 780 (Bankr.S.D.N.Y. 1992); *Leslie v. Hart (In re Hart ),* 130 B.R. 817, 825 (Bankr.N.D.Ind.1991); *Brody v. Brody (In re Brody ),* 120 B.R. 696, 699 (Bankr.E.D.N.Y.1990); *Zaera v. Raff (In re Raff ),* 93 B.R. 41, 44 (Bankr.S.D.N.Y.1988). However, in reality, such distinction is rarely clear. *In re Brody,* 120 B.R. at 699; *In re Silberfein,* 138 B.R. at 780; Henry J. Sommer et al., Collier Family Law and the Bankruptcy Code ¶ 6.04[1] at 6–24 to 6–25 (1994) [hereinafter *Collier* ] (support obligations and property settlements somewhat interchangeable).

Plaintiffs maintain that they are entitled to summary judgment because there is no question that the legal fees awarded in the matrimonial action as set forth above are nondischargeable pursuant to section 523(a)(5) of the Code. In support of their position the Plaintiffs rely heavily on the Second Circuit's decision in *Pauley v. Spong (In re Spong ),* 661 F.2d 6, 9 (2d Cir.1981). In *Spong,* the court noted that

[a]n award of attorney's fees *may be essential* to a spouse's ability to sue or defend a matrimonial action and thus a necessary under the law. Accordingly *most*, States treat counsel fees as being within the definition of alimony, maintenance, and support.

661 F.2d at 9 (emphasis added). However, the central issue before the Second Circuit in *Spong* was not whether an obligation to pay counsel fees was actually in the nature of alimony, maintenance, or support, but rather, was whether a debtor's obligation for legal services performed on behalf of his former spouse in connection with their divorce proceeding was dischargeable under section 523(a)(5)(A) of the Code because it was payable directly to the attorneys and not the former spouse. 661 F.2d at 9–11; *see In re Silberfein,* 138 B.R. 778 at 781 (analyzing *Spong*); *Wadleigh v. Wadleigh (In re Wadleigh*), 68 B.R. 499, 502 (Bankr.D.Vt.1986) (same).

In *Spong,* the Second Circuit agreed with the bankruptcy court's holding "that defendant's undertaking to pay his wife's counsel fees was in the nature of 'alimony, maintenance, or support.'" 661 F.2d at 8 (quoting *In re Spong,* 3 B.R. 619, 622 (Bankr. W.D.N.Y.1980)). The issue before this Court is whether the matrimonial related legal fees awarded to the Debtor's former spouse are *per se* in the nature of alimony, maintenance, or support. However, "the majority opinion in *Spong* did not go so far as to establish absolutely that counsel's fees in connection with a divorce is alimony, maintenance or support." *In re Silberfein,* 138 B.R. at 781; *see In re Wadleigh,* 68 B.R. at 502. Moreover, courts considering this issue have held that a motion for summary judgment on the dischargeability of matrimonial related legal fees must be denied because the question of whether or not the attorney's fees associated with the matrimonial proceedings were in fact nondischargeable alimony, maintenance, or support obligations, or in the alternative, a dischargeable property settlement created a genuine issue of material fact. *In re Silberfein,* 138 B.R. at 781–82; *Henry v. Henry (In re Henry*), 110 B.R. 608, 611 (Bankr.N.D.Ga. 1990).

In determining the nature of the Debtor's obligation to pay the legal fees awarded in the matrimonial action, a court "must conclude whether payments constitute alimony, maintenance or support pursuant to the bankruptcy laws, rather than state laws." *In re Raff,* 93 B.R. at 45; *In re Brody,* 120 B.R. at 698; *In re Henry,* 110 B.R. at 610; *Freyer v. Freyer (In re Freyer*), 71 B.R. 912, 916 (Bankr.S.D.N.Y.1987).

The proper approach under federal bankruptcy law is to determine whether the debt for the ex-spouse's attorney's fees was intended, at the time of the decree, to be part of the division of property, or part of the ex-spouse's support and maintenance. This determination must be made in light of all the facts and circumstances relevant to the intent of the attorney's fee award.

*In re Henry,* 110 B.R. at 610. The fact that the state court's final judgment of divorce specifically declines to award Sculler alimony "does not preclude a determination that an obligation is in the nature of alimony or support for purposes of federal bankruptcy law." *Collier* ¶ 6.03[2] at 6–16 to 6–17. Moreover, although the state court orders do not characterize the Debtor's obligation to pay Sculler's legal fees as a part of any support or alimony award or as a part of the division of property, with respect to the dischargeability of an obligation, even if the state court orders did characterize the nature of the legal fees, a bankruptcy court is not bound by such labels. *In re Silberfein,* 138 B.R. at 780 (citing *In re Raff,* 93 B.R. at 45); *Collier* ¶ 6.03[2] at 6–16.

In analyzing whether an obligation is a dischargeable property settlement or nondischargeable alimony, maintenance, or support, courts have examined many factors which "are applied with a view towards a determination of intent; either intent as expressed, or intent as inferred from the function which the obligation appears to fulfill, or by the conduct of the parties." *In re Brody,* 120 B.R. at 699. The factors considered include:

(1) whether the obligation terminates on the death or remarriage of either spouse;

(2) the characterization of the payment in

the decree and the context in which the disputed provisions appear; (3) whether the payments appear to balancè disparte [sic] income; (4) whether the payments are to be made directly to the spouse or to a third party; (5) whether the obligation is payable in a lump sum or in installments over a period of time; (6) whether the parties intended to create an obligation of support; (7) whether an assumption of debt has the effect of providing the support necessary to insure that the daily needs of the former spouse and any children of the marriage are met; and (8) whether an assumption of the debt has the effect of providing the support necessary to insure a home for the spouse and minor children.

*In re Kaufman,* 115 B.R. at 440–41 (citations omitted); *In re Silberfein,* 138 B.R. at 780; *In re Freyer,* 71 B.R. at 918.

Since *Spong,* bankruptcy courts have generally analyzed this area of the law as follows:

If a debtor is ordered to pay an ex-spouses' [sic] attorney[']s fees incident to a dissolution, and the fees awarded are based upon need, such fees are usually nondischargeable as being in the nature of support.

Attorney fees are not always categorized as support if the award of fees merely balances a property division, and neither party requires the awarding of fees as additional support. In such a case the fees are likely to be dischargeable.

*In re Silberfein,* 138 B.R. at 781 (quoting *Leslie v. Hart (In re Hart),* 130 B.R. 817, 825 (Bankr.N.D.Ind.1991)).

Thus, it is abundantly clear that "[i]n determining whether or not an obligation is designed for the support of a former spouse, the court must look ... to the intent of the parties and to the substance of the obligation." *In re Freyer,* 71 B.R. at 916; *In re Raff,* 93 B.R. at 45 (reviewing judgment to construe intent and determine nature of award). "When the parties or the court making the order expressed no intent, the court deciding dischargeability must attempt to infer an intent by examining the underlying facts of the case." *Collier* ¶ 6.04[2] at 6–

26; *see In re Raff,* 93 B.R. at 47. However, as discussed above, in ruling on a motion for summary judgment, it is the court's function to determine whether a genuine issue as to any material fact exists, not to resolve any factual issues. *Celotex,* 477 U.S. at 330, 106 S.Ct. at 2556; *Anderson,* 477 U.S. at 247–51, 106 S.Ct. at 2509–11; *Eastman Mach. Co.,* 841 F.2d at 473; *In re Sapru,* 127 B.R. at 319. Indeed, with respect to the awarded fees, "the inquiry into the circumstances of the parties must be made in every case to determine ... whether the obligation is in the nature of support. *Since this is a fact-sensitive task, often involving disputed facts or credibility and intent, it is rarely appropriate for summary judgment." Collier* at ¶ 6.05[1] at 6–50.2 (emphasis added).

The Second Circuit has adopted the view that '[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles.' *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1560 (2d Cir.1989) (quoting *Pfizer, Inc. v. Int'l Rectifier Corp.,* 538 F.2d 180, 185 (8th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977)); *see In re Kaufman,* 115 B.R. at 440 n. 1 (matters involving questions of intent "not susceptible to resolution by way of summary judgment").

In the instant case there exists a genuine issue of material fact as to the nature of the Defendant's obligation to pay the legal fees awarded by the state court which cannot be resolved by way of summary judgment. *See In re Silberfein,* 138 B.R. at 781–82; *In re Henry,* 110 B.R. at 611. The state court orders do not characterize the Debtor's obligation to pay Sculler's legal fees "as a part of any support or alimony award or as a part of the division of property." *In re Henry,* 110 B.R. at 611. Plaintiffs rely on the judgment of divorce and state court orders to support their contention that the legal fees awarded were intended to be in the nature of support. However, the judgment of divorce specifically declined to award Sculler alimony. Moreover, the Debtor vehemently disputes the Plaintiffs' characterization of the awarded fees and neither the judgment of divorce nor

the state court orders specify the intended nature of the underlying obligations. *See id.*

■ In addition, even if the legal fees awarded by the state court were nondischargeable alimony, maintenance, or support, summary judgment would still be inappropriate because a second material issue of fact is raised by the Debtor's contention that the payment of some or all of the awarded legal fees by Mr. Sculler resulted in an assignment pursuant to section 523(a)(5)(A) of the Code rendering the obligation dischargeable. Although it appears from the Plaintiffs' Brief that at least some of the legal fees awarded were paid by Mr. Sculler it has not been established how much, if any, of the fees were in fact paid.

Thus, this Court, drawing all inferences in favor of the Defendant, the non-moving party, as is required when considering a motion for summary judgment, finds that it would be inappropriate to grant summary judgment in the instant dischargeability proceeding. The Plaintiffs' motion for partial summary judgment is, therefore, denied.

### B. Motions for Discovery Sanctions and Civil Contempt

■ The Debtor's motions for an order of civil contempt pursuant to Fed.R.Bankr.P. 9020(b)[10] and seeking various discovery sanctions pursuant to Fed.R.Bankr.P. 7037[11] are denied. It has not been demonstrated to this Court that the Plaintiffs' and Mr. Scul-

ler's failure to attend their scheduled depositions involved the type of conduct which warrants the imposition of either discovery sanctions or civil contempt sanctions. As discussed above, they each requested *one* adjournment and the Debtor's counsel responded to such requests with motions for contempt and discovery sanctions against them. However, there was no motion made to compel the discovery sought.

■ With respect to discovery or procedural disputes, the Eastern District of New York requires that:

> Prior to seeking judicial resolution of a discovery or procedural dispute, attorneys for the affected parties or non-party witness shall attempt to confer in good faith in person or telephone in an effort to resolve the dispute.

The Eastern District's Standing Orders of the Court on Effective Discovery in Civil Cases, Rule 6(a). It is abundantly clear that Mr. Zivyak's cavalier refusal to extend to the Plaintiffs the courtesy of one adjournment did not constitute a good faith effort to informally resolve the scheduling dispute, as mandated by the above rule, therefore, Debtor's motion for discovery sanctions against the Plaintiffs is denied. Moreover, this Court refuses to find Mr. Sculler in civil contempt because it has not been demonstrated to this Court that his one request for an adjournment was not in good faith.

---

**10.** Rule 9020(b) provides in pertinent part:

> Contempt committed in a case or proceeding pending before a bankruptcy judge ... may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense.

Fed.R.Bankr.P. 9020(b).

**11.** Rule 7037(d) provides in pertinent part:

> If a party ... fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, ... after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any

action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule. Fed.R.Bankr.P. 7037(d). Subdivision (b)(2) provides that the court, among other things, may make orders including:

> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

Fed.R.Bankr.P. 7037(b)(2).

In reviewing the documents submitted in support of the Debtor's motions, this Court was amazed at the obvious hostility between counsel and is deeply saddened by the complete lack of professional courtesy. Furthermore, this Court finds the Debtors' motions for discovery sanctions and contempt particularly brazen in light of his own discovery antics in the state court matrimonial action. Therefore, for the reasons set forth above, the Debtor's motions for discovery sanctions and contempt are denied.

## CONCLUSIONS

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

2. Plaintiffs' motion for partial summary judgment is denied.

3. Debtor's motion for an order of civil contempt pursuant to Fed.R.Bankr.P. 9020(b) with respect to Leonard Sculler's failure to attend a deposition pursuant to a duly served subpoena is denied.

4. Debtor's motion seeking discovery sanctions pursuant to Fed.R.Bankr.P. 7037 for the Plaintiffs' failure to appear for duly noticed depositions is denied.

5. The parties are directed to go forward with this adversary proceeding so as to enable this Court to determine whether the legal fees awarded by the state court during the matrimonial proceedings are nondischargeable pursuant to section 523(a)(5) of the Code; and if so, whether the obligation was rendered dischargeable pursuant to section 523(a)(5)(A) of the Code.